UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BENNIGAN'S FRANCHISING | ) | |
| COMPANY, L.P., ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO. |
| | ) | |
| VS. | ) | 3:06-CV-2300-G |
| | ) | |
| ROBERT J. SWIGONSKI, ET AL., | ) | **ECF** |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This is a dispute between a franchisor and franchisees of three Bennigan's

restaurants.  Before the court is the motion of the plaintiffs, Bennigan's Franchising

Company, L.P. ("BFC") and Bennigan's of New York, Inc. ("BNY") (collectively, "the

plaintiffs" or "Bennigan's"), for a preliminary injunction.  The court held a hearing on

this issue on February 7, 2007 ("the hearing").  In accordance with Federal Rule of

Civil Procedure 52, the court sets forth its findings of fact and conclusions of law

below.  For the reasons stated, the plaintiffs' request for a preliminary injunction is

denied.

## I.  FINDINGS OF FACT

1.      On May 9, 2000, the defendants, Robert Swigonski, Joseph Piciucco and Leon Swigonski (collectively, "the individual defendants"), contracted with BFC for the exclusive right to open six Bennigan's Grill & Tavern restaurants in three New York market areas -- Buffalo, Rochester and Syracuse.  *See* Affidavit of Jennifer White ("White Affidavit") ¶ 3.

2.      Pursuant to their agreement with BFC, the individual defendants formed three corporations, One Benny's, Inc. ("One Benny's"), Two Benny's, Inc. ("Two Benny's") and Three Benny's, Inc. ("Three Benny's") (collectively, "the franchisee defendants"), to operate three Bennigan's restaurants.  *Id.* ¶ 6.

3.      Under the terms of their contract with BFC, the individual defendants were obliged to open a fourth Bennigan's restaurant by the end of 2005.  *Id.* ¶ 7.

4.      On September 19, 2006, after the individual defendants failed to open a fourth restaurant, BFC sent them a notice of breach threatening to terminate the agreement if the breach was not cured within thirty days.  *Id.*

5.      The individual defendants failed to cure the breach, so on October 26, 2006, BFC sent them a notice of termination.  *Id.* ¶ 8.

6.      In addition to the contract between the individual defendants and BFC, the franchisee defendants executed contracts with BFC regarding the lease and

operation of restaurants in three New York cities -- Syracuse, Amherst and Rochester. *Id*. ¶¶ 12, 21, 29.

7.     The restaurants in Syracuse and Amherst closed before BFC terminated its agreement with the individual defendants, but a restaurant in Rochester ("the restaurant") continues to operate at the site of the former Bennigan's location. *Id.* ¶¶ 17, 26-27, 37.

8.     The restaurant now operates as the Main Street Bar & Grill. *See* Transcript of Motion for Preliminary Injunction Before the Honorable A. Joe Fish ("Transcript") at 67:2-3.

9.     The restaurant has been partially or completely decharacterized, and no longer uses trademarks owned by the plaintiffs in its operation.[1]  Transcript at 77:21-83:1, 159:15-171:2.

10.     The Bennigan's restaurant nearest to the restaurant is located in Scranton, Pennsylvania -- 210 miles from Rochester.  See *id.* at 76:25-77:7, 129:1-4.

---

[1]     Although the defendants have not continued to use trademarks owned by the plaintiffs, they have continued to display signs containing the names of specific items found on the Bennigan's menu. *See* Transcript 68:1-17.  For example, the restaurant continues to display signs with the words "Big Irish" and "The American," which are the names of hamburgers on the Bennigan's menu. *Id.*  The defendants have agreed that these items should be removed from their restaurant. *See* Defendants' Proposed Findings of Fact and Conclusions of Law at 9.

11.   The plaintiffs need to enforce covenants not to compete to prevent former franchisees from continuing "to operate restaurants as a Bennigan's but putting other names on them."  Transcript at 63:11-13.

12.   If the restaurant is closed, some or all of its employees will be unemployed.  *See* Transcript at 171:23-25.

## II.  CONCLUSIONS OF LAW

The plaintiffs seek to enjoin the operation of the restaurant in accordance with the terms of a covenant not to compete present in the franchise agreement.[2]  *See* Plaintiffs' Brief in Support of its Application for a Preliminary Injunction ("Plaintiffs' Brief") at 1.  To obtain a preliminary injunction, a plaintiff must show the following: (1) there is a substantial likelihood of success on the merits; (2) there is a substantial threat that the plaintiff will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) granting the injunction will not disserve the public interest.  *Sugar*

---

[2]     In plaintiffs' original complaint and application for injunctive relief ("Complaint"), Bennigan's also seeks injunctive relief for alleged trademark infringement in violation of the Lanham Act.  *See* Complaint ¶¶ 82-85, 87-88, 94. However, the plaintiffs did not present this ground for relief during the hearing, in plaintiffs' brief in support of its application for a preliminary injunction or in plaintiffs' proposed findings of fact and conclusions of law for the preliminary injunction hearing.  Furthermore, the evidence presented at the hearing indicated that the restaurant now operates as the Main Street Bar & Grill and that it does not use marks owned by the plaintiffs in its operation.  *See* Findings ##8-9.  Thus, to the extent the plaintiffs have not waived their request for a preliminary injunction for alleged violations of the Lanham Act, that request is denied.

*Busters LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999). The decision to grant or deny preliminary injunctive relief is left to the sound discretion of the district court. *Mississippi Power & Light Company v. United Gas Pipe Line Company*, 760 F.2d 618, 621 (5th Cir. 1985). Such relief is an extraordinary remedy which should only be granted if the movant has clearly carried its burden of persuasion on each of the four factors. *Id.*; *Allied Marketing Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 809 (5th Cir. 1989) (citations omitted).

## A.  Likelihood of Success

When determining the likelihood of success on the merits, the court looks to the standards of the substantive law. See *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990). To obtain an injunction, the movant's likelihood of success must be more than negligible, *Compact Van Equipment Company, Inc. v. Leggett & Platt, Inc.*, 566 F.2d 952, 954 (5th Cir. 1978), and the preliminary injunction should not be granted unless the question presented by the litigant is free from doubt, *Congress of Racial Equality v. Douglas*, 318 F.2d 95, 97 (5th Cir.), *cert. denied*, 375 U.S. 829 (1963). As the level of persuasion in relation to the other three factors increases, the degree of persuasion necessary on the substantial likelihood of success factor may decrease. See *Productos Carnic, S.A. v. Central American Beef and Seafood Trading Company*, 621 F.2d 683, 686 (5th Cir. 1980) ("Where the other factors are strong, a showing of some likelihood of success on the merits will justify temporary injunctive relief.").

As noted above, the plaintiffs seek injunctive relief to enforce a covenant not to compete. *See* Plaintiffs' Complaint ¶ 95. The parties agree that New York law applies to this case. *See* Transcript at 12:4-6; 22:8-9. Therefore, to determine Bennigan's likelihood of success, the court will examine the requirements for the plaintiffs to enforce the covenant not to compete under New York law.

Under New York law, a covenant not to compete is enforceable against a former franchisee only if it is "reasonable in geographic scope and duration." *Emerging Vision, Inc. v. Main Place Optical, Inc.*, No. 16088-05, 2006 WL 118364, *4 (N.Y. Sup. Ct. January 11, 2006), *aff'd on reconsideration*, 2006 WL 469265; see also *Reed, Roberts Associates, Inc. v. Strauman*, 40 N.Y.2d 303, 307 (N.Y. 1976). Language in a restrictive covenant that "is unrestrained by any limitations keyed to uniqueness, trade secrets, confidentiality or even competitive unfairness . . . does no more than baldly restrain competition. This it may not do." *Columbia Ribbon & Carbon Manufacturing Company v. A-1-A Corporation*, 42 N.Y.2d 496, 499 (N.Y. 1977). Thus, a restrictive covenant is only considered reasonable if "(1) the restraint is no greater than is required than to protect a legitimate interest of the franchisor; (2) it does not impose an undue hardship on the franchisee; and (3) is not injurious to the public." *Emerging Vision*, 2006 WL 118364 at *4. The plaintiffs have failed to satisfy this reasonableness test.

The plaintiffs' witness, Jennifer White ("White"), testified at the hearing that the plaintiffs need to enforce the covenants not to compete in its franchise agreements to prevent former franchisees from continuing "to operate restaurants as a Bennigan's but putting other names on them."  Finding #11.  However, the evidence at the hearing showed that the defendants' restaurant is no longer operating as a Bennigan's or using marks owned by Bennigan's.  *See* Finding #9.  Moreover, no Bennigan's franchisee operates a restaurant within 210 miles of the Main Street Bar & Grill.  *See* Finding #10.  Because the defendants are not using marks owned by the plaintiffs to operate their restaurant, and because the nearest Bennigan's is more than two hundred miles away, the court concludes that the covenant at issue in this case is more limiting than would be required to protect the plaintiffs' legitimate business interests.  Therefore, it is not reasonable under the standard set forth in *Emerging Vision*.  2006 WL 118364 at *4.

The language used in the covenant not to compete -- which prohibits the defendants from operating or having any involvement with "any casual dining or other restaurant business . . . that is in any way competitive with or similar to a Bennigan's Restautant" -- is also overly broad.  *See* Bennigan's® Franchise Agreement ("Franchise Agreement") ¶ 22.3.  The term "casual dining" is not defined in the franchise agreement, but the agreement does include a list of restaurants that would

qualify as "casual dining." *Id.* Unfortunately, there does not seem to be a common thread binding all the examples together.

When asked to define "casual dining," the plaintiffs' witness Tracey Ann Sinnott stated, "I don't know the textbook answer, but I would say it's a restaurant where you went in and were seated and served by a server." Transcript 83:3-7. The plaintiffs adopted this definition and used it throughout the hearing. *See, e.g.,* Transcript 91:11-13. However, at least one of the restaurants in the list of examples -- Fuddrucker's -- has neither a host or hostess available to seat customers nor a server to take their orders. Transcript 187:22-188:11. Therefore, the court has attempted to determine the definition of the term "casual dining" by examining the list of examples contained in the franchise agreement and applying the *ejusdem generis*[3] and *inclusio unius est exclusio alterius*[4] canons of construction. However, these canons of construction may only be applied if a common thread exists among the items on the list. In this case, the plaintiffs themselves were unable to identify that common thread, and the court has been unable to do it as well. Similarly, the court can discern no "limitations keyed to uniqueness, trade secrets, confidentiality or even competitive unfairness" from examining the franchise agreement's use of the term "casual dining." See *Columbia Ribbon*, 42 N.Y.2d at 499.

---

[3]      "Of the same kind or class."

[4]      "To express one thing is to exclude the other."

Because the covenant prohibits the defendants from operating a "casual dining" restaurant without defining the term or providing a means to determine its definition by applying recognized canons of construction, and because the term is not limited by any reference to the sort of non-monetary injuries required under New York law, the covenant is unreasonably restrictive, and Bennigan's is not likely to succeed in enforcing the covenant on the merits. See *id.*

## B.  Irreparable Injury

An irreparable injury is one that cannot be remedied by an award of economic damages. *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). Under New York law, violation of a non-competition agreement is not an irreparable injury per se. See *Twin City Physicians Group, P.C. v. Kaushal*, 225 A.D.2d 1041, 1041 (N.Y. App. Div. 1996). Rather, the plaintiffs must prove that they will suffer some non-monetary injury if the injunction is denied.

In plaintiffs' brief in support of its application for a preliminary injunction ("Plaintiffs' Brief"), the plaintiffs posit that the covenant not to compete serves a legitimate interest and is reasonable in its scope. *See* Plaintiffs' Brief at 7-10. However, this argument speaks only to the validity of the covenant -- that is the plaintiffs' likelihood of success on the merits. See, e.g., *Ticor Title Insurance Company v. Cohen*, No. 98 Civ. 4001(JSM), 1998 WL 355420, *1 (S.D.N.Y. July 2, 1998), *aff'd*, 159 F.3d 774 (2nd Cir. 1998) (noting that determining the reasonableness of a

covenant's time and area restriction is only the first step in determining whether to grant injunctive relief).  Under New York law, a party must also show that some non-monetary right is in danger before it may enforce a covenant not to compete by injunction.  See *Emerging Vision*, 2006 WL 118364 at *6 (injunctive relief is available to protect against "unfair competition stemming from the use or disclosure of trade secrets or confidential information or customer lists.")  Such a covenant should be enforced by injunction only if the likely harm falls into one of two categories -- where a trade secret or confidential customer information may be disclosed, or where the services offered by the would-be competitor are "special, unique or extraordinary." *Ticor Title*, 1998 WL 355420 at *1.

Based on the evidence presented at the hearing, the court has found that the defendants have partially or completely decharacterized the restaurant, and the restaurant does not use marks owned by the plaintiffs in its operation.  *See* Finding #9.  Furthermore, the plaintiffs have not shown that the defendants are using any trade secrets or other confidential information acquired from Bennigan's in the operation of the restaurant.  Thus, the plaintiffs must prove that enforcement of the covenant not to compete is necessary to prevent the defendants from offering a special, unique or extraordinary service.  See *Ticor Title*, 1998 WL 355420 at *1. However, as demonstrated by the long list of allegedly competitive restaurants in the franchise agreement, the operation of a casual dining restaurant is not special, unique

or extraordinary.  *See* Franchise Agreement ¶ 22.3.  Consequently, the plaintiffs have not shown that they will suffer irreparable injury if their request for a preliminary injunction is denied.

## C.  Weighing the Injuries

Next the plaintiffs must show that the injury they will suffer if the court denies injunctive relief is greater than the injury the defendants will suffer if the relief is granted.  If the plaintiffs' motion for injunctive relief is granted, the defendants will be forced to close the restaurant.  This is a substantial injury.

If the motion is denied, the plaintiffs will suffer little injury.  White testified at the hearing that the plaintiffs need to enforce the covenants not to compete in its franchise agreements to prevent former franchisees from continuing "to operate restaurants as a Bennigan's but putting other names on them."  *See* Finding #11. Because the restaurant has been partially or completely decharacterized, because it does not use marks owned by Bennigan's in its operation, and because the nearest Bennigan's location is 210 miles away, there will be little or no injury to the plaintiffs if the restaurant is allowed to remain open.  *See* Finding #9.  Accordingly, it is clear that the potential injury to the defendants if the injunction is granted outweighs the injury the plaintiffs will suffer if their motion is denied.

D.  <u>The Public Interest</u>

Finally, the plaintiffs must show that granting the temporary restraining order will not disserve the public interest.  The plaintiffs have presented no argument explaining why the public interest favors granting the injunction.  By contrast, New York has a strong public policy that disfavors "sanctioning the loss of a man's livelihood" and favors "competition engendered by the uninhibited flow of services, talent and ideas."  *Reed, Roberts Associates*, 40 N.Y.2d at 307.  Furthermore, if the court were to grant an injunction enforcing the covenant not to compete, the restaurant would be forced to close and a number of employees would lose their jobs.  *See* Finding #12.  Therefore, the court concludes that the public interest weighs against granting the injunction.

III.  <u>CONCLUSION</u>

For the reasons stated above, the plaintiffs' motion for preliminary injunction is **DENIED**.

**SO ORDERED**.

February 27, 2007.

A. JOE FISH
CHIEF JUDGE