**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **BENNIGAN'S FRANCHISING** | § | |
| **COMPANY, L.P. and BENNIGAN'S** | § | |
| **OF NEW YORK, INC.** | § | |
|     **Plaintiffs and Counter-Defendants,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3-06-CV-2300-BH** |
| | § | |
| **ROBERT J. SWIGONSKI, JOSEPH A.** | § | |
| **PICIUCCO, LEON E. SWIGONSKI,** | § | |
| **ONE BENNY'S, INC., TWO BENNY'S,** | § | |
| **INC., and THREE BENNY'S, INC.** | § | |
| | § | |
|     **Defendants and Counter-Plaintiffs.** | § | **Consent Case** |

## MEMORANDUM OPINION

Pursuant to the District Court's *Order of Reassignment*, filed February 27, 2007, this

matter has been transferred to the undersigned United States Magistrate Judge for the conduct of

all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c).

On January 28, 2008, the Court conducted a bench trial regarding a contractual dispute

between Plaintiff and Defendants Robert J. Swigonski, Joseph A. Piciucco, and Leon E.

Swigonski. After consideration of the testimony and evidence presented during the trial, the

post-trial proposed findings of fact and conclusions of law, the argument of counsel, and the

relevant authorities, the Court makes the following findings of fact and conclusions of law

pursuant to Fed. R. Civ. P. 52.

## I. FINDINGS OF FACT

### A. Parties

Plaintiffs and Defendants are citizens of different states and the amount in controversy

exceeds $75,000, excluding interest and costs. *See* Doc. 1, at ¶ 9 (Plaintiffs' Original

Complaint); Doc. 25, at ¶ 9 (Defendants' First Amended Original Answer).

B.     **Development Agreement**

Effective May 9, 2000, Plaintiff Bennigan's Franchising Company, L.P. ("Bennigan's

Franchising") and Defendants Robert J. Swigonski, Joseph A. Piciucco, and Leon E. Swigonski

(the "Individual Defendants") signed a contract for the Individual Defendants to develop and

operate six Bennigan's® Restaurant franchise locations in the Buffalo, Rochester, and Syracuse

markets in the State of New York (the "Development Agreement").  *See* Plaintiffs' Trial Exhibit

1, at BENN 000001.

In exchange for this exclusive right of development, and in accordance with the terms of

the Development Agreement, the Individual Defendants promised to pay Bennigan's Franchising

for each opened Bennigan's Restaurant franchise location: (a) an Initial Fee of $25,000; (b) a

Continuing Fee of 4% of monthly gross revenue; and (c) a Production Fee of 1% of monthly

gross revenue.  *See id.*

The Development Agreement contained a "Development Schedule" by which the

Individual Defendants promised to open and continuously operate the first of the six

Bennigan's® Restaurant franchise locations within twenty-four months of the execution of the

Development Agreement.  *See id.*

According to the terms of the Development Schedule, the Individual Defendants also

agreed to open and continuously operate an additional Bennigan's® Restaurant location every

twelve months after the first one opened, until all six locations were open and continuously

operating within eighty-four months.  *See id.*

The Development Agreement stated that the Individual Defendants' failure to comply

with the Development Schedule would constitute a material breach of the Agreement.  *See id.* at

BENN 000006, art. 4.6.

The Development Agreement also stated that if Bennigan's Franchising terminated the Agreement because of the Individual Defendants' material breach, then Bennigan's Franchising would be entitled to seek recovery from the Individual Defendants for all damages Bennigan's Franchising sustained or would sustain in the future as a result of the Individual Defendants' breach of the Agreement, taking into consideration the Initial Fees, Continuing Fees, and Production Fees that would have been payable on all franchise locations that should have been opened by the time of the material breach. *See id.* at BENN 000015.

The Development Agreement further allowed Bennigan's Franchising to recover attorney fees and costs in the event of termination of the Agreement because of the Individual Defendants' material breach. *See id.*

Pursuant to Article 29.1 of the Development Agreement, the agreement and the relationship of the parties was to be governed by the laws of the State of Texas. *See id.* at BENN 000075.

Defendants Robert J. Swigonski and Joseph A. Piciucco signed the "Personal Guaranty and Agreement to Be Bound Personally by the Terms and Conditions of the Development Agreement," agreeing to serve as Personal Guarantors of the debts and obligations of the Individual Defendants under the Development Agreement. *See id.* at BENN 000025-26.

Effective July 21, 2004, Bennigan's Franchising and the Individual Defendants signed an "Amendment to Bennigan's® Development Agreement." *See* Plaintiffs' Trial Exhibit 2. The Amendment changed the Development Schedule so that the Individual Defendants had until December 30, 2005 to open and continuously operate the fourth Bennigan's® Restaurant franchise location. *See id*. at BENN 000090.

The Amendment also extended the Development Schedule for the remaining four

Bennigan's® Restaurant franchise locations.  According to the terms of the Amendment, the

Individual Defendants also agreed to open and continuously operate an additional Bennigan's®

Restaurant location every twenty-four months after the fourth one opened, until all six of the

Bennigan's® Restaurant franchise locations were open and continuously operating.  *See id*.

All other terms, conditions, and provisions contained in the original Development

Agreement remained unchanged by the Amendment and in full force and effect.  *See id.*

C.     **Defendants' Failure to Comply**

The Individual Defendants did not open the fourth Bennigan's® Restaurant location by

December 30, 2005, the date given in the amended Development Schedule, or at any time since

that date.

Further, the Individual Defendants failed to pay the Initial Fee, Continuing Fee, or

Production Fee due and owing to Bennigan's Franchising for the fourth Bennigan's® Restaurant

location.

After the Individual Defendants failed to open the fourth Bennigan's Restaurant

Franchise location in accordance with the amended Development Schedule, Bennigan's

Franchising sent the Individual Defendants a Notice of Breach on September 19, 2006.  *See*

Plaintiffs' Trial Exhibit 49.  The Notice of Breach alerted the Individual Defendants that their

failure to comply constituted a material breach of the Development Agreement and gave them

thirty days to comply with the Development Schedule.  *See id.*

When the Individual Defendants failed to cure their default within the requisite time,

Bennigan's Franchising sent them a Notice of Termination on October 26, 2006.  *See* Plaintiffs'

Trial Exhibit 51.  The Notice of Termination terminated the Development Agreement and alerted

the Individual Defendants to their post-termination obligations. *See id.*

**D.     Damages**

In accordance with the terms of the Development Agreement, the Individual Defendants

owed Bennigan's Franchising an Initial Fee of $25,000 for their fourth Bennigan's® Restaurant

franchise location, which was scheduled to open before the termination of the Development

Agreement.  *See* Plaintiffs' Trial Exhibit 61.  The Individual Defendants have not paid the Initial

Fee of $25,000 to Bennigan's Franchising.

In accordance with the terms of the Development Agreement, the Individual Defendants

owed Bennigan's Franchising a Continuing Fee of 4% of the projected gross revenue for their

fourth Bennigan's® Restaurant franchise location, which was scheduled to open before the

termination of the Development Agreement.  *See id.*  The projected gross revenue for the

unopened franchise location is based on the middle one-third of average restaurant sales for

Bennigan's franchise locations, as reported in Bennigan's Uniform Franchise Offering Circular

("UFOC") in 2007.  *See id.*  The Continuing Fee for the fourth Bennigan's® Restaurant franchise

location is projected to be $1,005,452.  The Individual Defendants have not paid the Continuing

Fee of $1,005,452 to Bennigan's Franchising.

In accordance with the terms of the Development Agreement, the Individual Defendants

owed Bennigan's Franchising a Production Fee of 1% of the projected gross revenue for their

fourth Bennigan's® Restaurant franchise location, which was scheduled to open before the

termination of the Development Agreement.  *See id.*  The projected gross revenue for the

unopened franchise location is based on the middle one-third of average restaurant sales for

Bennigan's franchise locations, as reported in Bennigan's UFOC in 2007.  *See id.*  The

Production Fee for the fourth Bennigan's® Restaurant franchise location is projected to be

$251,363.  The Individual Defendants have not paid the Production Fee of $251,363 to

Bennigan's Franchising.

**E.     Attorney's Fees**

Since the December 7, 2007 hearing on Plaintiffs' Motions for Default Judgment and

Partial Summary Judgment, Bennigan's Franchising has incurred attorney fees of $13,259 and

costs of $269.52.  *See* Plaintiffs' Trial Exhibits 62, 63.

## II.  CONCLUSIONS OF LAW

**A.     Jurisdiction**

The Court has jurisdiction over this case because Plaintiffs and Defendants are citizens of

different states and the amount in controversy exceeds $75,000, excluding interest and costs.

The Court also has jurisdiction over this case because certain claims arose under the

Lanham Act for trademark infringement.  The Court has supplemental jurisdiction over

Plaintiffs' claims because they are so related to the claims within the Court's original jurisdiction

that they form part of the same case or controversy under Article III of the United States

Constitution.

**B.     Applicable Law**

Because jurisdiction is based on diversity of citizenship, Texas law rules of contractual

construction apply.  *See Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

**C.     Breach of the Development Agreement**

Bennigan's Franchising and the Individual Defendants signed a valid and enforceable

contract entitled the "Development Agreement."  *See Prime Prods., Inc. v. S.S.I. Plastics, Inc.,* 97

S.W.3d 631, 636 (Tex.App.-Houston [1st Dist.] 2002, pet. denied)(elements of a valid contract under

Texas law are (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent

to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding).

Under Texas law, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Intern., Inc. v. Egle Group, LLC,* 490 F.3d 380, 387 (5th Cir. 2007) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.,* 51 S.W.3d 345, 351 (Tex.App.2001)). "A breach occurs when a party fails or refuses to do something he has promised to do." *Id.* (citing *Dorsett v. Cross,* 106 S.W.3d 213, 217 (Tex.App.-Houston [1st Dist.] 2003, no pet.)). Here, the Individual Defendants materially[1] breached the Development Agreement by failing to open a fourth Bennigan's® Restaurant franchise location in accordance with the amended Development Schedule contained in the Agreement.

Bennigan's Franchising alerted the Individual Defendants of their material breach and gave them time to cure the default, but they remained in material breach by the end of the cure period.

## D.    **Damages**

Bennigan's Franchising was damaged by the Individual Defendants' material breach because the Individual Defendants did not pay to Bennigan's Franchising the fees specified in the Development Agreement associated with the fourth Bennigan's® Restaurant franchise location.

---

[1]In determining the materiality of a breach under Texas law, courts consider the extent to which the nonbreaching party will be deprived of the benefit that it could reasonably anticipate from full performance as well as (i) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (ii) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (iii) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and (iv) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing. *Hernandez v. Gulf Group Lloyds,* 875 S.W.2d 691, 693 & n. 2 (Tex.1994) (citing RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981)). If one party to a contract commits a material breach, the other party may be discharged or excused from the obligation to perform. *Id.*

Specifically, the Individual Defendants, jointly and severally, owe Bennigan's Franchising an Initial Fee of $25,000; a Continuing Fee of $1,005,452; and a Production Fee of $251,363.

**E.** **Attorney's Fees**

In accordance with the terms of the contract and under state law, Bennigan's Franchising is entitled to recover its attorney's fees and costs from the Individual Defendants.

Bennigan's Franchising's requested attorney's fees of $13,259 and costs of $269.52 are reasonable and necessary, and reflect billable rates, hours incurred, and work performed that are reasonable and customary for cases of this size and type in the Northern District of Texas.

Accordingly, the Individual Defendants, jointly and severally, owe Bennigan's Franchising attorney's fees in the amount of $13,259 and costs in the amount of $269.52.

### III. CONCLUSION

For the reasons stated above, the Court finds that Plaintiff proved by a preponderance of evidence that the Defendants breached the Development Agreement. The Court therefore finds for Plaintiff in the amount of $1,281,815. The Court further finds that Plaintiff should recover its attorney's fees in the amount of $13,259 and costs in the amount of $269.52.

**SO ORDERED** on this 26th day of February, 2008.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE